POMERANTZ LLP
Brian Calandra
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
bcalandra@pomlaw.com

*Attorney for Plaintiff*

- additional counsel on signature page -

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KAROL KORONCZI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LULULEMON ATHLETICA INC., MEGHAN FRANK, and ANDRÉ MAESTRINI,<br><br>Defendants. | **Case No.**<br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Karol Koronczi ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's

attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding lululemon athletica inc. ("Lululemon" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Lululemon securities between March 18, 2026 and September 3, 2026, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Lululemon, together with its subsidiaries, designs, distributes, and retails technical athletic apparel, footwear, and accessories for women and men. The Company organizes its operations into four regional markets: Americas, China

Mainland, Asia Pacific ("APAC"), and Europe and the Middle East ("EMEA"). The Company has three reportable segments: Americas, China Mainland, and Rest of World, the latter of which is comprised of the APAC and EMEA regions on a combined basis.

3. Lululemon previously served as a dominant force and innovator in the premium activewear market, built on its reputation for providing trendy, high-quality products. In recent years, however, the Company's business has lost momentum as its products have become increasingly viewed as uninspired and out of touch with recent trends. Investors and analysts have also grown increasingly concerned with rising competition from new market entrants and issues with Lululemon's brand image, with the Company missing trends, facing backlash related to quality and design issues, and engaging in highly publicized proxy and other disputes with its founder, former Board of Directors ("Board") member, and largest individual shareholder, Chip Wilson ("Wilson").

4. Notwithstanding the foregoing issues, Defendants, at all relevant times, touted their purported turnaround plan for the Company and its three highlighted components: product creation, product activation, and enterprise enablement.

5. In March 2026, Defendants provided financial guidance for Lululemon's fiscal full year ("FY") of 2026,[1] including net revenue in the range of

[1] Lululemon's fiscal FY typically ends in either late January or early February.

$11.350 billion to $11.500 billion, representing growth of 2% to 4%, and diluted earnings per share ("EPS") in the range of $12.10 to $12.30 for the year. This guidance, following the aforementioned downturn in the Company's business and image, was issued as a testament to Defendants' purported confidence in their turnaround plan for Lululemon.

6. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Lululemon's store traffic and demand for its products was significantly deteriorating as a result of, *inter alia*, continued negative media and social-media commentary and softer-than-planned new product launches; (ii) the foregoing was likely to have a material negative impact on the Company's business and reputation, rendering its previously issued financial guidance for FY 2026 unrealistic; (iii) Defendants downplayed the true scope and severity of the foregoing issues; (iv) Defendants likewise overstated the strength and durability of Lululemon's overall business and turnaround plan, particularly in North America and mainland China; and (v) as a result, Defendants' public statements were materially false and misleading at all relevant times.

7. The truth began to emerge on June 4, 2026, when Lululemon issued a press release announcing its financial results for its fiscal first quarter ("Q1") of

2026, ended May 3, 2026. Therein, Defendants sharply reduced their previously issued financial guidance for Lululemon's FY 2026, "now expect[ing] net revenue to be in the range of $11.000 billion to $11.150 billion, representing a decline of 1% to 0%"—significantly below their prior guidance of $11.350 billion to $11.500 billion, representing growth of 2% to 4%—and "[d]iluted [EPS] . . . in the range of $10.95 to $11.15 for the year"—significantly below their prior guidance of $12.10 to $12.30.

8. On an accompanying earnings call held the same day with investors and analysts to discuss these results, Defendants disclosed that, in Q1 2026, Lululemon had experienced a significant reduction in store traffic across "all demographics" and regions, particularly in China and the U.S., which they primarily blamed on softer-than-planned new product launches and negative media and social-media commentary, the latter of which they asserted had "died down" and "subsided" in the quarter.

9. On this news, Lululemon's stock price fell $10.69 per share, or 8.56%, to close at $114.23 per share on June 5, 2026.

10. Then, on September 3, 2026, Lululemon issued a press release announcing its financial results for its fiscal second quarter ("Q2") of 2026, ended August 2, 2026. Therein, Defendants reported, *inter alia*, lower-than-expected net revenue of approximately $2.42 billion, missing consensus estimates by roughly $40

million. Defendants also sharply reduced Lululemon's FY 2026 financial guidance again, "now expect[ing] net revenue to be in the range of $10.350 billion to $10.500 billion, representing a decline of 5% to 7%"—significantly below their previously revised guidance of $11.000 billion to $11.150 billion, representing a decline of 1% to 0%—and "[d]iluted [EPS] . . . in the range of $9.48 to $9.73 for the year"—significantly below their previously revised guidance of $10.95 to $11.15.

11. On an accompanying earnings call held the same day with investors and analysts to discuss these results, Defendants disclosed that, in Q2 2026, Lululemon had continued to face negative media and social-media commentary, negatively impacting customer traffic, and softer-than-planned responses to certain new product launches, contributing to a moderating sales trend. Defendants further disclosed that these conditions were primarily attributable to the Company's Mainland China segment and "compounded by" additional commentary following an event that Defendants held on the Great Wall of China.

12. On this news, Lululemon's stock price fell $21.16 per share, or 17.38%, to close at $100.61 per share on September 4, 2026.

13. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

14. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

15. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

16. Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Per Lululemon's most recent quarterly report on Form 10-Q, as of August 28, 2026, there were 105,594,064 shares of the Company's common stock outstanding. Lululemon's common stock trades in the U.S. on the Nasdaq Global Select Market ("NASDAQ"). Accordingly, there are presumably hundreds, if not thousands, of investors in Lululemon's securities located in the U.S., some of whom undoubtedly reside in this District.

17. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

18. Plaintiff, as set forth in the attached Certification, acquired Lululemon securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

19. Defendant Lululemon is a Delaware corporation with principal executive offices located at 1818 Cornwall Avenue, Vancouver, British Columbia, Canada, V6J 1C7. The Company's common stock trades in an efficient market on the NASDAQ under the ticker symbol "LULU".

20. Defendant Meghan Frank ("Frank") served as Lululemon's Interim Co-Chief Executive Officer ("Co-CEO") at all relevant times. Defendant Frank has also served as Lululemon's Chief Financial Officer ("CFO") at all relevant times. Defendant Frank ceased serving as the Company's Interim Co-CEO on September 8, 2026, and continues to serve as Lululemon's CFO.

21. Defendant André Maestrini ("Maestrini") served as Lululemon's Interim Co-CEO at all relevant times. Defendant Maestrini has also served as Lululemon's President and Chief Commercial Officer ("CCO") at all relevant times. Defendant Maestrini ceased serving as the Company's Interim Co-CEO on September 8, 2026, and continues to serve as Lululemon's President and CCO.

22. Defendants Frank and Maestrini are collectively referred to herein as the "Individual Defendants".

23. The Individual Defendants possessed the power and authority to control the contents of Lululemon's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Lululemon's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Lululemon, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

24. Lululemon and the Individual Defendants are collectively referred to herein as "Defendants".

## SUBSTANTIVE ALLEGATIONS

### Background

25. Lululemon, together with its subsidiaries, designs, distributes, and retails technical athletic apparel, footwear, and accessories for women and men. It operates a combination of physical retail locations and e-commerce services via its

websites, other region-specific websites, third-party online marketplaces, and mobile applications.

26. Lululemon operates in 30 countries around the world and organizes its operations into four regional markets: Americas, China Mainland, APAC, and EMEA. The Company has three reportable segments: Americas, China Mainland, and Rest of World, the latter of which is comprised of the APAC and EMEA regions on a combined basis.

27. In 2025, Lululemon's net revenue from its Americas, China Mainland, and Rest of World segments represented 71%, 16%, and 13% of its total net revenue, respectively. Accordingly, as it has acknowledged in its SEC filings, Lululemon's "operations in the Americas are core to [its] business[.]"

28. Lululemon previously served as a dominant force and innovator in the premium activewear market, built on its reputation for providing trendy, high-quality products. In recent years, however, the Company's business has lost momentum as its products have become increasingly viewed as uninspired and out of touch with recent trends. Indeed, in a February 17, 2026 *CBS News* article, entitled "Is Lululemon coming apart at the seams? Here's why the brand is losing its flex", a retail analyst and managing director at GlobalData Retail observed that the Company's products have become "junkified," with Lululemon straying from its

trademarks of technical innovation and high quality to heavily branded attire that holds less appeal for its customer base.

29. Investors and analysts have also grown increasingly concerned with rising competition from new market entrants and issues with Lululemon's brand image, with the Company missing trends, facing backlash related to quality and design issues, and engaging in highly publicized proxy and other disputes with its founder, former Board member, and largest individual shareholder, Wilson.

30. Notwithstanding the foregoing issues, Defendants, at all relevant times, touted their purported turnaround plan for the Company and its three highlighted components: product creation, product activation, and enterprise enablement.

**Materially False and Misleading Statements**

31. The Class Period begins on March 18, 2026. On March 17, 2026, during post-market hours, Lululemon issued a press release announcing its financial results for its fiscal fourth quarter ("Q4") and FY of 2025, ended February 1, 2026. The press release provided financial guidance for Lululemon's FY 2026, stating that, "[f]or 2026, the Company expects net revenue to be in the range of $11.350 billion to $11.500 billion, representing growth of 2% to 4%", and "[d]iluted [EPS] are expected to be in the range of $12.10 to $12.30 for the year."

32. The press release also quoted Defendant Maestrini as stating, in relevant part[2]:

> Throughout 2025, we reported double-digit revenue growth in our international business and are taking action to incorporate learnings from across our regions to drive forward our strategies. ***Our teams are energized by the initial response to our recent product launches and continue to deliver successful guest activations globally.*** Looking ahead, we are encouraged by our opportunities in North America and around the world . . . .

33. Also on March 17, 2026, during post-market hours, Defendants hosted a conference call with investors and analysts to discuss Lululemon's Q4 and FY 2026 results. During her prepared remarks on the call, Defendant Frank touted the Company's purported "***healthy and loyal customer base*** that ***remains engaged*** and looking to us for great product and experiences," "the innovations that our team has been developing and . . . the response from guests to these offerings", Defendants' "decisive actions to ***position the business for sustainable growth***", and Company-sponsored and marketing "events [that] ***demonstrate that when we engage with our guests through our unique activations, we see a tangible response***," which purportedly "c***ontinues to reinforce the opportunity for lululemon*** going forward."

34. With respect to Defendants' purported turnaround plan for Lululemon's business, Defendant Frank stated, *inter alia*:

> I'll now dive into 3 components of our action plan: product creation, product activation, and enterprise enablement. During [Q4], Andre and

[2] All emphases herein are added unless otherwise indicated.

> I dove deeper into each pillar of our plan and have been working with the teams across the organization to ensure we entered 2026 moving with focus and speed. ***We've been course-correcting where needed to restore and protect our brand health over time.*** A top priority for the management team as we enter the year is returning to full-price sales growth in North America. ***Through a series of steps that include the inflection of product newness and reducing the level of markdowns, SKU reduction and the rebalancing of inventory levels.*** This approach ***will*** reinforce our premium positioning that has long set lululemon apart from others while also protecting operating margin.

35. Also during her prepared remarks on the call, Defendant Frank represented that purportedly positive trends in North America, mainland China, and other geographical regions supported Lululemon's FY 2026 financial guidance, stating, in relevant part:

> Let me now shift to our guidance outlook for 2026. As I mentioned, we are executing against our action plan, with particular emphasis on driving healthier full-price sales in North America. ***We're already seeing green shoots related to our new product launches and our recent brand activations.*** But I want to also acknowledge that ***an improvement in overall trends in North America will likely progress over the course of the year and into 2027*** as we return to a healthier baseline of full-price sales.

* * *

> Turning to our full year 2026 guidance outlook. We expect revenue to be in the range of $11.35 billion to $11.5 billion, representing growth of 2% to 4% relative to 2025. By region, we expect revenue in North America to be down 1% to 3%, with the U.S. down 1% to 3%. ***Baked into our total revenue guidance for North America is an improvement in full-price sales. We are already seeing better full-price selling relative to Q4, and we'd expect positive year-over-year growth in full price to begin in Q2 and continue into the second half, driven by the rollout of new styles, innovations and core updates over the course of the year.***

> We expect revenue in China Mainland to be up approximately 20%, which takes into account our outperformance in 2025. ***Trends remained strong in Q1***, and we're expecting a revenue increase of 25% to 30%, which includes a modest lift from the shift of Chinese New Year into the quarter. And in Rest of World, we expect revenue to increase in the mid-teens.

36. During his prepared remarks on the same call, Defendant Maestrini likewise represented, *inter alia*:

> ***We are already seeing better full-price sell-through in Q1 relative to Q4***, and we are targeting further improvement as we move through the year, ***driven by increased product newness, innovation and operating discipline***.
>
> * * *
>
> [I]n North America, with our new spring merchandise that is already hitting our stores and website, ***we have increased our new style penetration to approximately 35%***. We know that our guests are looking for new styles and product from us. And when we deliver them effectively, we see strong response . . . . [O]ther examples of successful new styles include EasyFive and the Groove Wide-Leg.
>
> Let me shift to our international business, ***where momentum remained strong***. ***In China Mainland, our guests [are] responding well to our product assortment in Q4*** with outerwear and lounge being standout categories . . . . ***[W]e continue to capitalize on locally relevant events to engage with guests in unique ways.***

37. Also on March 17, 2026, during post-market hours, Lululemon filed an annual report on Form 10-K with the SEC, reporting its financial and operating results for its fiscal Q4 and FY ended February 1, 2026 (the "2025 10-K"). With

respect to the Company' China Mainland market, the 2025 10-K stated, in relevant part:

> We have experienced net revenue growth in China Mainland and believe that as we continue to expand our operations and build our brand awareness, ***net revenue will continue to increase in this market***. We continue to invest in brand building in our China Mainland segment, and our increased penetration of new product ***is also expected*** to ***drive revenue growth in China Mainland***. We believe China Mainland net revenue growth ***will drive an increase in our overall international net revenue.***

38. With respect to Lululemon's Americas market, the 2025 10-K stated, in relevant part, that "[w]e continue to build brand awareness through a product activation strategy which is aligned with our new product innovation, including leveraging our ambassadors."

39. The 2025 10-K also represented that Lululemon's e-commerce "channel is effective in building brand awareness, especially in new markets", that "we successfully compete on the basis of our premium brand image, our technical product innovation, and our commitment to creating highest quality product for our guests", that "our ability to introduce new product innovations, combine function and style, and connect through in-store, online, and community experiences can set us apart from our competition", and that "our vertical retail distribution strategy and community-based marketing differentiates us further, allowing us to more effectively control our brand image and connect with our guests."

40. Appended as exhibits to the 2025 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendant Frank—in her dual capacity as Lululemon's principal executive and principal financial officer—certified that the 2025 10-K "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;" and that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the [Company] as of, and for, the periods presented in this report[.]"

41. On April 20, 2026, Lululemon issued a press release entitled "lululemon Strengthens Presence in Mexico with E-Commerce Launch and Store Expansion Plan[.]" The press release touted the Company's "launch[ of] its e-commerce channel in Mexico", which purportedly "enhances its guest experience", as well as "the company's continued growth opportunity in the region."

42. The same press release likewise represented that "lululemon continues to . . . enhance its guest experience through high performance product, unique brand activations, and best-in-class omnichannel offerings."

43. The statements referenced in ¶¶ 31-42 were materially false and misleading because Defendants made false and/or misleading statements, as well as

failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Lululemon's store traffic and demand for its products was significantly deteriorating as a result of, *inter alia*, continued negative media and social-media commentary and softer-than-planned new product launches; (ii) the foregoing was likely to have a material negative impact on the Company's business and reputation, rendering its previously issued financial guidance for FY 2026 unrealistic; (iii) Defendants likewise overstated the strength and durability of Lululemon's overall business and turnaround plan, particularly in North America and mainland China; and (iv) as a result, Defendants' public statements were materially false and misleading at all relevant times.

**<u>The Truth Begins to Emerge</u>**

44. The truth began to emerge on June 4, 2026, when Lululemon issued a press release during post-market hours announcing its Q1 2026 financial results (the "Q1 2026 Earnings Release"). Therein, Defendants sharply reduced their previously issued financial guidance for Lululemon's FY 2026, "now expect[ing] net revenue to be in the range of $11.000 billion to $11.150 billion, representing a decline of 1% to 0%"—significantly below their prior guidance of $11.350 billion to $11.500 billion, representing growth of 2% to 4%—and "[d]iluted [EPS] . . . in the range of

$10.95 to $11.15 for the year"—significantly below their prior guidance of $12.10 to $12.30.

45. The same day, also during post-market hours, Defendants hosted a conference call with investors and analysts to discuss Lululemon's Q1 2026 results (the "Q1 2026 Earnings Call"). During her prepared remarks on the call, Defendant Frank provided additional color regarding Lululemon's sharply reduced FY 2026 financial guidance, stating, in relevant part:

> [T]here are 2 key factors impacting our trend. ***First, we experienced spikes of negative commentary in the media and on social channels with regard to our brand, which had an impact on traffic and overall top line performance. And second, not all of our product launches have met our expectations.***
>
> While we've had several successful launches so far this year, ***we've seen others, as we start Q2, not generate the anticipated guest response. Taken together, these factors impacted performance and are reflected in our updated guidance.***

46. During his prepared remarks on the same call, Defendant Maestrini further disclosed that, "***[i]n China, we . . . experienced a slowing of momentum towards the end of Q1 as we saw spikes of negative commentary***[.]"

47. During the question-and-answer ("Q&A") phase of the call, an analyst asked, *inter alia*, whether "the shift in traffic that you've seen in recent weeks over-index to any specific consumer demographic cohort or guest type?" In response, Defendant Frank stated: "***No. We really did see a broad-based traffic reduction, which was really all demographics.***"

48. Also during the Q&A phase of the call, another analyst pressed Defendants for further clarification regarding the negative commentary impacting Lululemon's business, stating:

> I'm just wondering if you can elaborate on the social media issues that you talked about. What did they stem from? How long did they last? Why did they end? Is there any lingering impact? If you could help us with that, that'd be great.

In response, Defendant Frank disclosed, in relevant part:

> So I would say ***there were a number of factors impacting the negative commentary around the brand, both, I would say, media and social.*** A couple to mention would be, obviously, ***we had the proxy contest during that period*** as well as ***we had some questions around the composition of some of our products in mid-April*** . . . . [W]e have not yet seen a return to our pre-disruption, I'd say, trends. So we're closely monitoring and feel it's prudent, I think, to update our range in terms of what we're seeing today and the trend of the business.

49. The same analyst posed a follow-up question, asking "[w]as it mostly in the U.S., in China, both or other regions?" Defendant Frank acknowledged that "***it was across regions. And predominantly, I would say China was impacted as well as the U.S.***"

50. The foregoing disclosures prompted numerous market analysts to cut their price target ("PT") on the Company's stock and/or downgrade the Company. For example, UBS cut its PT to $124 from $153, Stifel cut its PT to $134 from $176, Bank of America cut its PT to $140 from $175, J.P. Morgan cuts its PT to $149 from $173, Telsey Advisory Group cut its PT to $122 from $175, Bernstein cut its PT to

$145 from $170, BTIG downgraded the Company to a neutral from buy rating, and BNP Paribas downgraded the Company to an underperform from neutral rating.

51. Moreover, as *Bloomberg News* reported on June 5, 2026, "Lululemon . . . shares tumbled to their lowest level in ***eight years*** after the upscale yogawear company cut its annual forecast due to deteriorating performance in North America."

52. Following Defendants' disclosures in the Q1 2026 Earnings Release and Call, Lululemon's stock price fell $10.69 per share, or 8.56%, to close at $114.23 per share on June 5, 2026. Despite this decline in the Company's stock price, Lululemon securities continued trading at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding, *inter alia*, the true scope and severity of the issues they disclosed and the feasibility of achieving their revised FY 2026 financial guidance.

53. For example, the Q1 2026 Earnings Release quoted Defendant Frank as touting Lululemon's purportedly "***solid*** start to 2026" and "work to drive ***improvements in North America [that] resulted in some positive signals in the quarter***, including a sequential improvement in full-price sales."

54. The Q1 2026 Earnings Release also quoted her as acknowledging the "headwinds that have led us to adjust our outlook for the full year", while immediately downplaying the same by representing that "[w]e have assessed the

business and ***are taking additional actions to reposition where needed and further strengthen our product engine***" and "***remain confident in our path forward***."

55. The Q1 2026 Earnings Release also quoted Defendant Maestrini as stating:

> During the quarter, ***we continued to grow our Lululemon community*** as we entered new markets and ***elevated our product, brand, and guest experiences around the world***. This work included ***delivering successful product capsules and activations*** across train, tennis, and run, as well as implementing ***enhancements across our store fleet and digital channels that we will build upon in the months ahead***. We recognize that we have more work to do, and our teams remain focused on our priorities as we continue our efforts to ***reignite growth*** and realize Lululemon's full potential.

56. Moreover, during the Q1 2026 Earnings Call, Defendant Frank represented, *inter alia*, that Defendants were focused on "[s]trengthen[ing] performance in North America while ***continuing to expand our global growth engine***", that Defendants had already seen "***encouraging signs in Q1 that reinforce we're moving in the right direction***", and that "we are moving with urgency to make the ***necessary adjustments to reaccelerate momentum, particularly in North America***."

57. Defendant Frank further represented during the Q1 2026 Earnings Call that the negative media and social media commentary impacting the Company's business "***have died down and subsided***[.]"

58. Defendant Maestrini likewise represented during the Q1 2026 Earnings Call that "spikes of negative commentary . . . ***ha[ve] now subsided***."

59. Also during the Q1 2026 Earnings Call, Defendant Maestrini touted the Company's initiatives in North America and China, including a marketing event held on the Great Wall of China, purportedly attesting to Lululemon's progress in improving its North American and Chinese businesses, stating, *inter alia*:

> Let's get to a regional review of Q1 performance and start with North America. In Q1, ***I'm encouraged that we have experienced a sequential improvement in our full price sales relative to Q4***.
>
> * * *
>
> ***In China, we had a strong start of the year, supported by successful product and brand activations*** during Chinese New Year run and tennis campaigns . . . . ***The team is focused on building brand awareness and distinction through our mindful performance position and community activation.*** In yoga, ***one of the most powerful examples of this took place just a few days ago in Beijing on the Great Wall of China***, where more than 2,000 guests and 70 ambassadors practiced yoga at the flagship event ***that launched a series of global activations***.

60. Also on June 4, 2026, Lululemon filed a quarterly report on Form 10-Q with the SEC, reporting its financial and operating results for its fiscal Q1 ended May 3, 2026 (the "Q1 2026 10-Q"). The Q1 2026 10-Q stated the following, in relevant part, regarding Defendants' purported turnaround plan, and market conditions and trends pertaining to the Company's reportable segments:

> ***We have initiated an action plan to drive sustainable net revenue growth in the Americas, structured around three strategic pillars:***

> ***product creation, product activation, and enterprise enablement.*** This includes a plan to increase the reliance of full price selling to ***drive sustainable revenue growth***.
>
> Net revenue in China Mainland and Rest of World increased 30% and 13%, respectively, and comparable sales increased 20% and 5%, respectively. ***We experienced increased traffic in these markets which led to higher comparable sales.***

61. The Q1 2026 10-Q also downplayed the Q1 decrease in comparable sales in Lululemon's Americas segment, touting that it was "partially offset by higher e-commerce traffic" and "a $15.8 million increase from new or expanded company-operated stores and our other channels."

62. With respect to Lululemon's China Mainland and Rest of World segments, the Q1 2026 10-Q touted that "[t]he increase in comparable sales was ***primarily*** a result of ***increased traffic***[.]"

63. Appended as exhibits to the Q1 2026 10-Q were substantively the same SOX certifications as referenced in ¶ 40, *supra*, signed by Defendant Frank.

64. The statements referenced in ¶¶ 44-49 and 53-63 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Lululemon's store traffic and demand for its products was significantly deteriorating as a result of, *inter alia*, continued negative media and social-media commentary and softer-than-planned new product

launches; (ii) the foregoing was likely to have a material negative impact on the Company's business and reputation, rendering its previously issued financial guidance for FY 2026 unrealistic; (iii) Defendants downplayed the true scope and severity of the foregoing issues; (iv) Defendants likewise overstated the strength and durability of Lululemon's overall business and turnaround plan, particularly in North America and mainland China; and (v) as a result, Defendants' public statements were materially false and misleading at all relevant times.

## **The Truth Continues to Emerge**

65. The truth continued to emerge on September 3, 2026, when Lululemon issued a press release during post-market hours announcing its Q2 2026 financial results (the "Q2 2026 Earnings Release"). Therein, Defendants reported, *inter alia*, lower-than-expected net revenue of approximately $2.42 billion, missing consensus estimates by roughly $40 million. Defendants also sharply reduced Lululemon's FY 2026 financial guidance again, "now expect[ing] net revenue to be in the range of $10.350 billion to $10.500 billion, representing a decline of 5% to 7%"—significantly below their previously revised guidance of $11.000 billion to $11.150 billion, representing a decline of 1% to 0%—and "[d]iluted [EPS] . . . in the range of $9.48 to $9.73 for the year"—significantly below their previously revised guidance of $10.95 to $11.15.

66. The same day, also during post-market hours, Defendants hosted a conference call with investors and analysts to discuss Lululemon's Q2 2026 results (the "Q2 2026 Earnings Call"). During her prepared remarks on the call, Defendant Frank revealed that Lululemon had continued to "face[] negative commentary in the media and social channels, which impacted traffic, and softer-than-planned response to some new product launches, which contributed to a moderating sales trend." She further acknowledged, *inter alia*, that "Q2 revenue came in below our expectations with the shortfall driven predominantly by China Mainland," that "the overall response to our product launches remains inconsistent", and that "we've continued to see pressure on the brand in both of our largest markets", all of which resulted in their "updated . . . guidance for the remainder of the year."

67. Further, during his prepared remarks on the Q2 2026 Earnings Call, Defendant Maestrini disclosed, in relevant part:

> As [Defendant Frank] mentioned, we have seen several issues impacting brand sentiment and product in China, which have hurt traffic and overall sales momentum. This began with spikes of negative commentary in the media and on social channels at the end of Q1 and early Q2, ***and was compounded by the additional commentary post our Q1 call related to an event we held on the Great Wall of China***. These factors have contributed to softness in both our store and digital channels. Performance in e-commerce further impacted by a decision made by Tmall not to anniversary their 618 event in the same way as last year. In addition, we did not participate in promotions following this event.

68. During the Q&A phase of the Q2 2026 Earnings Call, an analyst pressed for additional details regarding the scope of the store traffic issues Defendants had observed, asking, "when you think about channels, stores and online, is there at all a difference in the performance of stores and online and traffic patterns to each for the brand?" In response, Defendant Frank further revealed, in relevant part:

> I'd say we've overall seen traffic pressure ***in both channels*** as well as some conversion pressure ***in both channels*** as well. ***So it's been relatively consistent, I would say, in terms of where we've seen the impact*** and really connects back to our priorities of getting after brand sentiment with some of the activations we have planned as well as some conversion actions we have, both in product and in improvements we're making there.

69. The foregoing disclosures prompted a slew of significant PT cuts from market analysts. For example, BNP Paribas cut its PT to $44 from $88, Piper Sandler cut its PT to $80 from $110, Morgan Stanley cut its PT to $83 from $93, J.P. Morgan cut its PT to $95 from $154, Barclays cut its PT to $95 from $113, Stifel cut its PT to $100 from $134, and Bernstein cut its PT to $115 from $145.

70. Following Defendants' disclosures in the Q2 2026 Earnings Release and Call, Lululemon's stock price fell $21.16 per share, or 17.38%, to close at $100.61 per share on September 4, 2026.

71. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**Regulation S-K Item 303**

72. Defendants violated Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(b)(2)(ii) ("Item 303"), which required Lululemon to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Defendants' failure to disclose, *inter alia*, that Lululemon's business continued to suffer from negative media and social-media commentary and softer-than-planned new product launches violated Item 303 because these issues represented known trends or uncertainties that were likely to have a material unfavorable impact on the Company's business and financial results.

**SCIENTER ALLEGATIONS**

73. During the Class Period, Defendants had both the motive and opportunity to commit fraud. They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.

74. As detailed above, during the Class Period, the Individual Defendants made numerous, highly specific statements regarding ongoing issues facing the

Company and their related turnaround efforts in earnings releases, reports, and calls, while providing initial and updated FY 2026 financial guidance to investors. Further, Defendants were already facing heavy scrutiny from investors and analysts regarding their ability to strengthen Lululemon's business. Defendants were thus undoubtedly monitoring and laser-focused on their turnaround efforts, particularly in North America and mainland China, which are two of Lululemon's most important markets, and thus well aware that continued negative media and social-media commentary and softer-than-planned new product launches were negatively impacting the Company's business in those regions. Yet, Defendants downplayed these issues while providing unrealistic FY 2026 financial guidance to investors. Accordingly, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of Lululemon's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

75. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Lululemon securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families

and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

76. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Lululemon securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Lululemon or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

77. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

78. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

79. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Lululemon;
- whether the Individual Defendants caused Lululemon to issue false and misleading financial statements during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;
- whether the prices of Lululemon securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

80. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

81. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- Lululemon securities are traded in an efficient market;
- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NASDAQ and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased, acquired and/or sold Lululemon securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

82. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

83. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**COUNT I**

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

84. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

85. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

86. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Lululemon securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Lululemon securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan

and course of conduct, Defendants, and each of them, took the actions set forth herein.

87. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Lululemon securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Lululemon's finances and business prospects.

88. By virtue of their positions at Lululemon, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

89. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Lululemon, the Individual Defendants had knowledge of the details of Lululemon's internal affairs.

90. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Lululemon. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Lululemon's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Lululemon securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Lululemon's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Lululemon securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

91. During the Class Period, Lululemon securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Lululemon securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Lululemon securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Lululemon securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

92. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

93. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during

the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

**COUNT II**

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

94. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

95. During the Class Period, the Individual Defendants participated in the operation and management of Lululemon, and conducted and participated, directly and indirectly, in the conduct of Lululemon's business affairs. Because of their senior positions, they knew the adverse non-public information about the true health of Lululemon's business, financial prospects, and its false financial statements.

96. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Lululemon's financial condition and results of operations, and to correct promptly any public statements issued by Lululemon which had become materially false or misleading.

97. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Lululemon disseminated in the marketplace during the Class Period concerning Lululemon's results of operations.

Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Lululemon to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Lululemon within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Lululemon securities.

98. Each of the Individual Defendants, therefore, acted as a controlling person of Lululemon. By reason of their senior management positions and/or being directors of Lululemon, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Lululemon to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Lululemon and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

99. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Lululemon.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: November 2, 2026

Respectfully submitted,

POMERANTZ LLP

*/s/ Brian Calandra*
Brian Calandra
Jeremy A. Lieberman*
J. Alexander Hood II*
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
bcalandra@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*

**Pro hac vice* applications forthcoming

**CERTIFICATION PURSUANT**
**TO FEDERAL SECURITIES LAWS**

1. I, Karol Koronczi, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against lululemon athletica inc. ("lululemon") and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire lululemon securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired lululemon securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. The attached sheet lists all of my transactions in lululemon securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the Class as set forth in the Complaint, beyond my *pro rata* share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**Executed** 9/30/2026
**(Date)**

Signed by:
Karol Koronczi
97912F8AB08941A...
**(Signature)**

Karol Koronczi
**(Type or Print Name)**

**lululemon athletica inc. (LULU)** **Karol Koronczi**

**List of Purchases/Acquisitions and Sales**

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 8/24/2026 | 195 | $121.2000 |
| Purchase/Acquisition | 8/24/2026 | 3 | $121.2400 |